**IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF MISSOURI
KANSAS CITY DIVISION**

| | | |
|---|---|---|
| SCOTT ELLIS, individually and on behalf of similarly situated persons, | ) ) ) | |
| Plaintiff, | ) ) | Case No. _____ |
| v. | ) ) | **JURY TRIAL DEMANDED** |
| NISSAN NORTH AMERICA, INC., and NISSAN MOTOR COMPANY, LTD., | ) ) ) | |
| Defendants. | ) ) | |

**CLASS ACTION COMPLAINT**

Plaintiff Scott Ellis ("Plaintiff"), on behalf of himself and all others similarly situated ("Class"), states and alleges as follows:

**INTRODUCTION**

1.     Defendant Nissan North America, Inc. and Nissan Motor Company, Ltd. (collectively "Nissan") manufactured and sold 108,409 model year 2009 Nissan Murano vehicles (collectively, the "Class Vehicles"). Nissan is aware that the Class Vehicles have a persistent safety-related defect in the design and manufacture of its braking system (the "Defect") which intermittently causes soft braking pressure, slow braking, or/or additional brake pedal travel required to stop the vehicle (individually or collectively, "Soft Braking").

2.     Fourteen crashes, three with injuries, have been reported so far as a result of the Defect. Hundreds of other Murano drivers have told Nissan and the National Highway Traffic Safety Administration ("NHTSA") that they have experienced Soft Braking.

1

3.     Nissan acknowledges that a defect in the Class Vehicles' ABS actuators and hydraulic control unit (collectively, the "HCU") causes Soft Braking, but despite this knowledge and its obvious safety risks, refuses to recognize the seriousness of the Defect or provide a recall that will adequately fix it.

4.     Many owners of Class Vehicles are not in a position repair the Defect, even after they experience Soft Braking, because the replacement of the HCU costs between $2,000 and $4,000. Additionally, Nissan has provided no assurances that the replacement ABS actuator and/or hydraulic control unit will not suffer from the same problems.

5.     This case is not about the negligent design and/or manufacture of the Defect. Plaintiff is filing this suit because Nissan refuses to recognize the seriousness of the Defect or provide a recall that will adequately repair it. As detailed below, the service they have provided to Class Vehicles does not adequately repair the Defect and significant safety issues remain even after the work has been completed.

6.      This action is also being brought because Nissan delayed in engaging in any type of recall activity after they were aware of the dangers caused by the Defect.

7.     Finally, this case is being brought because Nissan was intentionally deceptive in how it described the Defect to consumers. Although it described a "soft-breaking issue," Nissan did not fully describe the problem or explain the dangers it posed. No information provided to consumers indicated that "soft-breaking" could potentially lead to serious traffic accidents

8.     On information and belief, Nissan changed the design of the HCU in later models of the Murano.

9.     On behalf of himself and the proposed Class, Plaintiff seeks damages and equitable relief, including restitution and injunctive relief.

## PARTIES

10.     Plaintiff Scott Ellis is a resident of Overland Park, Kansas.

11.     Defendant Nissan North America, Inc. has its headquarters and principal place of business in Franklin, Tennessee. Nissan North America, Inc. is the U.S. subsidiary of Nissan Motor Company, Ltd., which is headquartered in Japan. These entities shall hereinafter collectively be referred to as "Nissan."

12.     The Court has jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. §1332(d), because: (a) this action is brought as a proposed class action under Fed. R. Civ. P. 23; (b) the proposed Class includes more than 100 members; (c) many of the proposed Class Members are citizens of states different than Nissan; and (d) the matter in controversy exceeds $5,000,000, exclusive of interest and costs.

13.     Venue is proper in this judicial District under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to claims occurred and/or emanated from this District. Specifically, Nissan is registered to conduct business in Missouri; has sufficient minimum contacts in Missouri; and intentionally avails itself of the markets within Missouri through the promotion, sale, marketing, and distribution of its vehicles, thus rendering the exercise of jurisdiction by this Court proper and necessary. Moreover, Nissan's wrongful conduct (as described herein) foreseeably affects consumers in Missouri. Plaintiff purchased his defective 2009 Nissan Murano vehicle in the State of Missouri, brought his defective vehicle to the dealer for repair in the State of Missouri, and suffered damages as a result of Nissan's conduct.

3

## SUBSTANTIVE ALLEGATIONS

### The 2009 Nissan Murano Defect

14.     Nissan manufactures, markets, and distributes automobiles in the United States, including the Nissan Murano. This case concerns the 2009 model year Nissan Murano. This action is brought to address a persistent safety-related Defect in the design and/or manufacture of several components of the Class Vehicles' braking system.

15.     All model year 2009 Murano automobiles manufactured and distributed by Nissan have defective HCUs that make braking extremely difficult and pose an obvious danger to drivers and others in traffic.

16.     Nissan explains the reason for the Defect as follows: "The ABS actuators manufactured during this time period are potentially susceptible to a chemical reaction between the valve surface coating and the DOT 3 brake fluid, which in rare instances, may cause a gel to form around the normally closed valve and in some cases cause it to stick open. As a result, brake fluid pressure may fluctuate, and the customer may experience increased brake pedal travel (soft brake pedal)."

17.     Consumers rely on automakers, such as Nissan, to promptly inform them and initiate a remedy or countermeasure when they discover an automotive defect, especially one that is safety related. Nissan, however, did not immediately notify Plaintiff or the Class Members about the Defect. In fact, Nissan waited almost eight years after receiving the first complaint of Soft Braking, and two years after NHSTA began its investigation, to provide notice.

4

18. On May 3, 2017, NHTSA's Office of Defects Investigation opened a Preliminary Evaluation investigation into the problem of Soft Braking. NHTSA Action Number PE17002 stated: "The subject failure of the HCU, which involves improper operation of an internal hydraulic control valve, can cause extended brake pedal travel and may result in a reduction in overall braking effectiveness."

19. The subject ABS actuator and hydraulic control unit is manufactured by Continental for Nissan.

20. Nissan responded to NHSTA on July 28, 2017 by submitting an acknowledgement that the hydraulic control system can result in increased braking time.

21. Despite this acknowledgement, Nissan waited until March 22, 2018 to begin conducting a Voluntary Service Campaign. Even then, Nissan was adamant that this was not a safety recall. The notices sent to Class Members did not adequately address, let alone suggest, any safety concern caused by the Defect.

22. The Voluntary Service Campaign required Plaintiff and the Class to take their vehicles to a Nissan dealership, where the dealer would "flush the brake fluid, install new DOT 4 brake fluid, and inspect the Antilock Brake System (ABS) actuator" (the "Recall Remedy"). Nissan's Recall FAQs on its website and on its December 20, 2018 Safety Recall Campaign Bulletin states that failure to complete the Recall Remedy "may cause a soft brake pedal (excessive pedal travel)" but Nissan does not clearly explain what this means, namely that the brake pedal will feel soft and fail to stop the car as intended, potentially causing a serious collision.

23. The Voluntary Service Campaign also stated that Nissan "would replace the ABS brake actuator" if it failed the inspection after the Recall Remedy was complete.

24.     On April 18, 2018, NHTSA's Office of Defects Investigation upgraded its investigation into the Soft Braking problem from a Preliminary Evaluation to an Engineering Analysis. At that time, the NHTSA's Office of Defects Investigation had identified at least 484 Class Vehicles that had experienced Soft Braking.

25.     On December 19, 2018, Nissan upgraded the Voluntary Service Campaign to a Voluntary Safety Recall (the "Recall"). The Recall created a stop sale on all Class Vehicles that did not complete the Recall Remedy. Nissan stated that it was recalling the Class Vehicles because "the valves within the ABS Hydraulic Control Units (HCU) may react with brake fluids containing specific corrosion preventative additives. This reaction may cause the valves to not close properly." Nissan offered the same Recall Remedy as previously offered, namely that a dealer will "flush the brake system with DOT 4 fluid. The HCU will then be tested to detect a possible stuck valve condition. If necessary, the HCU will be replaced."

26.     Nissan continued, however, to mislead drivers by stating that the "possible effect of this condition" is "increased brake pedal travel (soft brake pedal)." In other words, despite Nissan acknowledging the Recall as a safety recall, Nissan never explained to the Class that the Defect could cause their brakes not to work as expected, thereby potentially causing a serious collision and bodily injury.

27.     In addition, Nissan acknowledged that the 2010-2014 Nissan Muranos are "equipped with the same part but exhibit significantly lower rates of malfunction."

28.     Nissan released its campaign bulletin for the Recall on December 20, 2018 and began contacting affected owners via U.S. Mail beginning February 4, 2019.

29.     As of April 30, 2019, 8,187 vehicles out of the 86,265 total recall population in the United States (less than 10%) have undergone the Recall Remedy.

30.     More than 500 drivers have complained to NHTSA about the Soft Braking, a large number given that many drivers are not familiar with the NHTSA and complain, if at all, to Nissan or one of its dealerships. A sampling of complaints from the NHTSA website include:

NHTSA ID Number: 11141789 dated January 9, 2019:

Tl* the contact owns a 2009 Nissan Murano. While driving various speeds over bumps in the road, the brake pedal traveled to the floorboard, when it was depressed, and did not immediately stop the vehicle. Also, the abs indicator would illuminate occasionally. The dealer was not called. The vehicle was taken to an independent mechanic who stated that there was no remedy for the failure. The failure recurred. The manufacturer was made aware of the failure and stated that there was no recall. The vehicle was not diagnosed or repaired. The failure mileage was approximately 74,000.

NHTSA ID Number: 11154908 dated November 30, 2018:

Two major problems I've had with my Murano are the brakes loosing pressure causing me not to be able to brake in time, caused an accident on a roundabout. The second is the steering wheel lock column going out, causing my not to be able to start the vehicle

NHTSA ID Number: 11153732, dated November 26, 2018:

Tl* the contact owns a 2009 Nissan Murano. While the contact's spouse was driving, the brake pedal was depressed and traveled to the floorboard. The vehicle failed to stop and traveled into an intersection. There were no warning indicators illuminated. The dealer was not contacted. The vehicle was not diagnosed or repaired. The manufacturer was made aware of the failure and provided no assistance. The failure mileage was 65,000.

NHTSA ID Number: 11152904 November 20, 2018:

The abs system on my 2009 Nissan Murano does not work, it led to an accident. I have read up on this and this seems to be a recurring problem with Nissan Murano 2009-2015 models. It is unacceptable that a car company can get away with this and then take the stance that they are not responsible.

NHTSA ID Number: 11141789 dated October 22, 2018:

Tl* the contact owns a 2009 Nissan Murano. While driving at an unknown speed and attempting to stop the vehicle, the brake pedal traveled to the floorboard and the vehicle did not stop immediately. There was no warning indicator illuminated. The vehicle was taken to Greenacres Nissan (561-899-

7

4294, located at 5353 Lake Worth Rd, Greenacres, FL 33463) where it was diagnosed that the brake actuator needed to be replaced. The manufacturer was made aware of the failure and stated that there was no recall. The vehicle was not repaired. The failure mileage was approximately 52,000.

NHTSA ID Number: 11132069, dated September 28, 2018:

My 2009 Nissan Murano has 67,000 miles, 2 days ago while traveling home from a local store in the rain trying to stop at a stop sign the brake pedal went completely to the floor and brakes did not work. The car went into the intersection, thankfully no other cars were coming. Brake pedal continues to go to the floor, car does not stop until standing on the pedal pushing it completely to the floor. Took it to my mechanic, he drained the brake lines to get rid of any air and put in new brake fluid. Did not help. He then told me to look at the complaints and open investigation about the many 2009 Murano having this same problem and all the money owners have spent to try to fix the problem with no good results. I also called the Nissan dealer and they said they never heard of any problems with the 2009 Murano. I am thankful my mechanic did his homework. But now I am stuck with a $275.00 a month payment for a car that is not safe to drive and nobody, even the Nissan dealers admit that there is a true problem or defect and nobody knows how to fix it. Without you admitting there is a defect and requiring a recall is forcing people to continue to drive these cars with faulty brakes. I just hope it does not take a death or two for this defect to be recalled because with all the documented issues being basically the same and your investigation being open for over a year i am sure many people will be opening law suits if death or injury occur. This is a serious situation and these car owners deserve more then what they are receiving from you and Nissan. Time to step up and fix this before anybody else gets hurt or any deaths occur. Your note says to retain any documentation for 5 years, well in 5 years these cars will be 14 years old and seeing that this problem seems to start around 65,000 miles, this needs fix now!

**Nissan's Inadequate Recall Remedy**

31.     On information and belief, the Recall Remedy is inadequate to fix the Defect for several reasons. First, flushing the brake fluid and installing new DOT 4 brake fluid does not address the root problem that the valve(s) located inside the ABS actuator may not properly close during breaking. Second, a visual inspection of the outside of the metal housing holding the ABS actuator does not allow a mechanic to view the four valves located inside, making a visual inspection of the ABS actuator an inadequate way to identify the Defect. Third, testing the HCU

8

is inadequate to determine whether a valve is in a stuck position and, more importantly, whether a valve may become stuck in the future.

32.     On information and belief, the only repair that will fix the Defect and prevent this Soft Braking is replacement of the HCU. However, very few if any of the ABS actuators and/or hydraulic control units inspected as part of the Recall were replaced because of their high cost and the fact that the Defect cannot be identified by visual inspection or testing.

33.     The Recall Remedy does not fix the Defect, as evidenced by numerous complaints to NHTSA of Soft Braking after the Recall Remedy was completed. For example:

NHTSA ID Number: 11193059 dated April 8, 2019:

Tl* the contact owned a 2009 Nissan Murano. When decelerating at 40 MPH, the brakes failed. As a result, the contact rear ended another vehicle. The battery and ABS warning indicators illuminated. Future Nissan of Folsom (12610 Auto Mall Cir. Folsom, CA, 95630, (877) 635-4447) flushed the brake fluid, but the failure recurred, and the vehicle was involved in a side impact collision. The vehicle was totaled and towed to a collision center. The vehicle was not repaired. Police reports were not filed and there were no injuries. The manufacturer was made aware of the failure. The cause of the failures was not determined. The failure mileage was 141,000.

NHSTA ID Number: 11195341 dated April 10, 2019:

Tl* the contact owns a 2009 Nissan Murano. While driving approximately 40 MPH, the brake pedal traveled to the floorboard when the brake pedal was depressed. The vehicle still came to a stop. The contact stated that the failure occurred on a daily basis for six months. The. Contact took the vehicle to Pearson Nissan (2060 SW College Road, Ocala, FL, 34471) twice to be repaired per NHTSA campaign number: 18v916000 (service brakes, hydraulic); however, the failure persisted. The manufacture was notified and filed case numberL35155429. The approximate failure mileage was 130,000.

NHSTA ID Number: 11160537 dated December 10, 2018:

Brakes failed due to ABS actuator failure while in motion on a highway. Vehicle was recalled for brake fluid change and ABS actuator test. ABS actuator failed 4 months after fluid change. Nissan refused to make repairs. Total cost of repair was $2400. This created an unsafe condition which Nissan refuses to acknowledge.

9

NHTSA ID Number: 11152628 dated November 19, 2018:

When approaching a red light on a local road, my vehicle slowed down but did not come to a complete stop. The brake pedal provided no resistance and therefore was applied to the floor of the vehicle. As a result, my car passed through the intersection at approximately 10MPH. Upon immediate inspection by a technician, the brake fluid was flushed and replaced with DOT 4 fluid. Three months later, the same issue occurred while on the highway. The brake pedal lacked resistance, was applied to the floor of the car, and the car did no come to a complete stop until it was turned off while on the highway at a speed of 10MPH. Under a Nissan brake fluid service campaign, the brake fluid was once again flushed, replaced with DOT 4 fluid, and ABS was inspected. Dealer was unable to identify the issue since the inspection passed and states the ABS was most likely activated in both incidents without cause. No further effort is being provided. Upon filing a case with Nissan consumer affairs, Nissan is unable to replace the actuator per the service campaign since tests passed and dealer is unable to replicate scenario. Nissan and the dealer are both unable to identify the issue and unwilling to provide assurance that the brakes are safe to operate.

**Nissan's Knowledge of the Defect and the Dangers Posed**

34.     Nissan knew or should have known when it sold the Class Vehicles that these vehicles contained the Defect, that Soft Braking is dangerous, and that as a result of the Defect, the Class Vehicles were rendered unsafe and dangerously defective.

35.     Nissan has known for years that drivers were complaining about Soft Braking in Class Vehicles. As illustrated in the examples above, complaints were made to NHTSA as early as 2010 yet Nissan did not notify owners about the Defect until 2018.

36.     Given Nissan's knowledge of the Soft Braking and Defect in the Class Vehicles, Nissan knew or should have known that the Class Vehicles had a serious safety risk. Nonetheless, Nissan decided to sell Class Vehicles without repairing or replacing the HCUs, putting Nissan owners, drivers, passengers, and others on the road at risk. Nissan did not tell its customers that Soft Braking may occur at any time and may cause a collision and bodily injury.

10

37.     Even in its Recall materials, Nissan did not tell customers that "soft braking" means the vehicle takes much longer to stop than it should and might cause a collision. Nissan had exclusive and superior knowledge of the Defect and actively concealed the Defect and its corresponding danger from consumers who had no way to reasonably discover the problem before buying their Class Vehicles.

38.     Had consumers been aware of the Defect in their Class Vehicles, they would not have purchased their vehicles or would have paid far less money for them. As Nissan knows, a reasonable person would consider knowledge of the Defect important information and would not purchase or lease a vehicle with a dangerously defective braking system, or, at minimum, would have paid substantially less for the vehicle.

39.     Although there have been numerous publicly available complaints to the contrary, Nissan continues to claim that the Recall Repair will fix the Defect.

40.     As of the date of this filing, Nissan is still claiming that the Class Vehicles are safe to drive.

**Plaintiff's Experience**

41.     Plaintiff purchased his 2009 Nissan Murano in 2011 from State Line Nissan in Kansas City, Missouri.

42.     On at least two occasions, Plaintiff has experienced Soft Braking while driving his 2009 Nissan Murano, nearly causing an accident each time.

43.     In November 2017, Plaintiff was almost in a serious motor vehicle accident when his 2009 Nissan Murano brakes failed while traveling on a bridge on US 69 Highway. When Plaintiff tried to brake, the pedal dropped immediately to the floor without slowing the vehicle as

Plaintiff intended. The vehicle eventually did slow after Plaintiff fully put the brake all the way to the floor.

44. Shortly after, on November 20, 2017, Plaintiff took his 2009 Nissan Murano into State Line Nissan.

45. Plaintiff had become aware of the NHTSA investigation and brought paperwork associated with the investigation with him to State Line Nissan.

46. Upon reviewing the NHTSA investigation documentation, representatives of State Line Nissan stated to Plaintiff that the NHTSA investigation was not relevant to their inquiry upon Plaintiff's braking issues.

47. A representative of the dealership further said it was unable to reproduce the problem, reprogramed the ABS control unit, and charged Plaintiff $74.03.

48. A representative of the dealership stated to Plaintiff that they knew nothing of a braking issue associated with similar Nissan Muranos and that they had previously brought in a Nissan master mechanic that also did not know about any systemic braking issues. On November 27, 2018, Plaintiff took his Class Vehicle to Hendrick Nissan after his brake pedal again dropped all the way to the floor when his anti-lock brakes were activated. The Dealer completed the Recall Remedy by flushing the brake fluid, replacing with DOT 4 fluid pursuant to Nissan's Voluntary Service Campaign, and inspecting the ABS Actuator. On information and belief Plaintiff was charged $91.13 for this service.

49. Initially, Hendrick Nissan had recommended no replacement.

50. The Dealer's Recommended Services list included "Replace ABS control module (Replace ABS control module at customer request)," which was marked as "caution" status and quoted as $2,919.93 to replace. Plaintiff requested financial assistance from Nissan to make this

repair, but Nissan denied Plaintiff's request on December 4, 2018 because the repair order from Hendrick Nissan did not provide a "repair recommendation of replacement for your ABS Actuator."

51.     After complaining on numerous occasions, Plaintiff got a call from Nissan on or about June 5, 2019 in which it informed him it needed his part for testing.

52.     On June 18, 2019, Nissan removed and replaced Plaintiff's ABS control module. While doing so, it never admitted there was a problem, apologized for their conduct, or reimbursed him for his out-of-pocket expenses and time spent trying to repair the vehicle.

## TOLLING

53.     Plaintiff and the Class did not discover, nor could they have discovered through the exercise of reasonable diligence, Nissan's deception concerning the Defect alleged herein.

54.     Nissan's concealment was effective until a NHTSA investigation prompted by consumer complaints forced Nissan to initiate the recall.

55.     Plaintiff and the Class could not have discovered through the exercise of reasonable diligence that Nissan was concealing the Defect until the NHTSA recall campaign revealed it to the public.

56.     Until a Class Member experienced Soft Braking, Plaintiff and members of the Class would have no reason to discover the Defect, and once they did, they would have no reason to discover the existence of a widespread Defect and effort to conceal it.

57.     Plaintiff and the Class therefore did not discover, and did not know of, facts that would have caused a reasonable person to suspect that Nissan had concealed information about the Defects in the Class Vehicles until shortly before this action was filed.

58.     For these reasons, all applicable statutes of limitation have been tolled by operation of the discovery rule with respect to claims as to the Class Vehicles.

## ALLEGATIONS RELATED TO PUNITIVE DAMAGES

59.     Plaintiff hereby incorporates by reference all of the allegations in all paragraphs of this Complaint as though fully set forth in this paragraph.

60.     Nissan's unlawful practices including deception, false promises, misrepresentation, and/or concealment, suppression, or omission of material facts in connection with the sale, distribution or advertisement of the Class Vehicles were caused by an evil motive and/or resulted from a conscious disregard and/or reckless indifference to the rights of Plaintiff and the Class alike.

61.     As a result of Nissan's conduct alleged herein, the jury should be permitted to return a verdict of punitive damages under Count IV of this Complaint that will serve to punish Nissan and deter others from like conduct. Under the MMPA, "[t]he court may, in its discretion, award punitive damages and may award to the prevailing party attorney's fees, based on the amount of time reasonably expended, and may provide such equitable relief as it deems necessary or proper." *See* R.S.Mo. 407.025; *Grabinski v. Blue Springs Ford Sales, Inc*., 203 F.3d 1024 (8th Cir. 2000), *rehearing and rehearing en banc denied, certiorari denied* 121 S.Ct. 70, 531 U.S. 825, 148 L.Ed.2d

## CLASS ACTION ALLEGATIONS

62.     Plaintiff brings Counts I-IV as a class action pursuant to Fed. R. Civ. P. 23, on behalf of himself and as the Class Representative of the Class:

> All persons or entities who, for personal use, purchased or leased a 2009 Nissan Murano within the State of Missouri.

14

Excluded from the Class are Nissan, any entity in which Nissan has a controlling interest, any of the officers, directors, or employees of the Nissan, the legal representatives, heirs, successors, or assigns of the Nissan, and of Nissan's authorized dealerships, anyone employed with Nissan's counsels' firm, and any Judge to whom this case is assigned, and his or her immediate family.

63.     Plaintiff's claims asserted in Counts I-IV satisfy the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of a class action pursuant to Fed. R. Civ. P. 23.

64.     The proposed Class is so numerous that joinder of all of its members is impractical. According to Nissan, 86,265 2009 Nissan Muranos were affected by the Recall. Based upon recent population counts, Plaintiff estimates that at least 1,000 of the Class Vehicles were sold in Missouri.

65.     Questions of fact and law common to the Class sought in Counts I-IV predominate over any questions affecting only individual members of the Class, including, but not limited to:

  a.  Whether Nissan knew or became aware that the subject HCUs were not properly designed and/or manufactured, yet continued to manufacture, distribute, advertise, and market the subject parts without correcting the problems and while concealing the defective design and/or manufacture of the parts from the public and the Class;

  b.  Whether Nissan knew or became aware that the subject HCUs were not properly designed and/or manufactured, and intentionally created the Recall to inadequately remedy the Defect;

  c.  Whether the Nissan engaged in a pattern and practice of deceiving and defrauding the Class and suppressing the defective nature of the HCUs;

  d.  Whether Nissan's practices and concealment violated the MMPA and/or breached the implied warranties;

  e.  Whether the Plaintiff and members of the Class are entitled to compensatory damages and, if so, the nature of such damages; and

15

f. Whether Plaintiffs and members of the Class are entitled to an award of reasonable attorneys' fees, prejudgment interest, post-judgment interest and costs of suit.

66. The questions set forth above, among others, predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness, and equity to other available methods for the fair and efficient adjudication of the state law claim.

67. Plaintiff's claim is typical of the claims of the Class he seeks to represent. Plaintiff and all members of the Class sustained damages as a result of the diminution of the value of their vehicle. The financial losses of each member of the Class were directly caused by Nissan's concealment of material facts surrounding the Defect and failure to properly fix the Defect.

68. Plaintiff is an adequate representative of the claims sought in Counts I-IV because he is a member of the Class and his interest does not conflict with the interest of the members of the Class he seeks to represent. The interests of the members of the Class will be fairly and adequately protected by Plaintiff and the undersigned counsel, who have extensive experience prosecuting class action litigation.

69. A class action is superior to other available methods for the fair and efficient adjudication of this litigation – particularly in the context of consumer product liability actions like the present action, where individual plaintiffs lack the financial resources to vigorously prosecute a lawsuit in federal court against one of the largest car manufacturers companies in the country. In addition, class treatment is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Nissan's practices.

16

## COUNT I - DECLARATORY JUDGMENT
### (Plaintiff, individually, and on behalf of the Class)

70.     Plaintiff hereby incorporates by reference all of the allegations in all paragraphs of this Complaint as though fully set forth in this paragraph.

71.     Declaratory relief is intended to minimize "the danger of avoidable loss and unnecessary accrual of damages." 10B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2751 (3d ed. 1998).

72.     There is an actual controversy between Nissan and Plaintiff concerning:

a.      Whether Nissan failed to warn against the potential unsuitability of its defective Class Vehicles;

b.      Whether Nissan failed to provide an appropriate remedy to fix the Defect;

c.      Whether Nissan bears responsibility for providing a cost-free remedy to fix the Defect; and

d.      Whether the Defect posed a risk to drivers.

73.     The above-mentioned questions are ripe for judicial determination.

74.     Pursuant to 28 U.S.C. § 2201, the Court may "declare the rights and legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

75.     Nissan has failed to provide a remedy that will adequately fix the Defect and prevent future accidents as evidenced by numerous documented complaints of drivers who experienced Soft Braking despite their Class Vehicle receiving the Recall Remedy.

76.     Accordingly, based on Nissan's failure to act, Plaintiff seeks a declaration that the defective nature of the Class Vehicles is material and requires an effective remedy that will prevent Soft Braking from recurring, thereby preventing future harm.

77. The declaratory relief requested herein will generate common answers that will settle the controversy related to the alleged Defect of the Class Vehicles and the reasons for Nissan's repeated failure to fix it. There is an economy to resolving these issues together as they have the potential to eliminate the need for continued and repeated litigation.

## COUNT II-FRADULENT CONCEALMENT
### (Plaintiff, individually, and on behalf of Class)

78. Nissan had knowledge of the Defect and that the Defect could potentially lead to serious traffic accidents if Class Vehicle did not brake properly.

79. Nissan was aware of serious traffic accidents with serious injuries occurring as a result of the Defect.

80. Nissan attempted to conceal the serious nature of the Defect in communications with the Class and others.

81. Nissan sent two communications regarding the Defect to Class Members. Neither stated that the Defect could potentially lead to serious traffic accidents. Nissan's communications with the Class Members were wholly inadequate in describing the seriousness of the Defect and the risks it posed.

82. Even after Nissan issued the safety recall, they continued to only refer to the Defect as "soft braking". At no time, did they explain to Class Members the potential and actual consequences from the Defect. Nissan's communications were wholly inadequate in addressing the serious nature of the defect.

83. By continuing to refer to the Defect as "soft braking," Nissan fraudulently concealed the true nature of the Defect in an effort to avoid compensating the Class for the cost of repairs to Class Vehicles.

18

84.     Plaintiff and the Class were injured as a result of Nissan concealing the potential consequences of the Defect in several ways, including: by bodily injury as a result of a collision caused by the Defect; by paying a higher price for a Class Vehicle than it was actually worth, or purchasing or leasing a Class Vehicle they would not have purchased or leased had they been aware of the Defect; by the diminished value of their Class Vehicle as a result of the Defect; by the inherent on-going risk that their Class Vehicles may experience; and/or by spending a significant amount of time and money to repair the Defect.

### COUNT III - UNJUST ENRICHMENT
**(Plaintiff, individually, and on behalf of the Class)**

85.     Plaintiff hereby incorporates by reference all of the allegations in all paragraphs of this Complaint as though fully set forth in this paragraph.

86.     Nissan had knowledge of the Defect and the serious safety risks it poses, which Nissan failed to disclose to Plaintiff and the Class.

87.     As a result of their wrongful and fraudulent acts and omissions with respect to the concealment of the Defect, as set forth above,  Nissan obtained monies that rightfully belonged to Plaintiff and the Class to their detriment.

88.     By failing to disclose the scope and risk of the Defect, Nissan has been unjustly enriched by Plaintiff's and the Class members' purchase of their Class Vehicles.

89.     In addition, Nissan has been unjustly enriched by issuing an inadequate recall and failing to adequately fix the Defect in the Class Vehicles.

90.     It would be inequitable and unjust for Nissan to retain these wrongfully obtained profits under the circumstances.

91.     Nissan's retention of these wrongfully obtained profits would violate fundamental principles of justice, equity, and good conscience.

92.     Plaintiff and the Class are entitled to restitution of the profits unjustly obtained by Nissan, plus interest.

## COUNT IV - VIOLATION OF THE MISSOURI MERCHANDISING PRACTICES ACT
### (Plaintiff, individually, and on behalf of the Class)

93.     Plaintiff hereby incorporates by reference all of the allegations in all paragraphs of this Complaint as though fully set forth in this paragraph.

94.     The MMPA provides that "[t]he act, use, or employment by any person of any deception . . . [or] unfair practice, or any concealment . . . of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce . . .  is declared to be an unlawful practice." Mo. Rev. Stat § 407.020.1.

95.     The enabling regulations for the MMPA define an "unfair practice" as conduct that (1) offends public policy; (2) is unethical, oppressive, and unscrupulous; (3) causes a risk of substantial injury to consumers; (4) was not in good faith; (5) is unconscionable; or (6) is unlawful. See Mo. Code Regs. Ann. tit. 15, § 60-8

96.     Under the MMPA, the term "merchandise" is broadly defined to include "any objects . . . or services." Mo. Rev. Stat. § 407.020.4. The Class Vehicles are "merchandise" within the scope of the MMPA.

97.     The MMPA authorizes private causes of action, and class actions. Mo. Rev. Stat. §§ 407.025.1.025.2. Plaintiff and members of the proposed Class are individuals entitled to bring suit and recover under the MMPA.

98.     When Nissan designed, developed, manufactured, marketed, and sold the Class Vehicles, it was involved in the conduct of trade and commerce under the MMPA.

99.     At the time Nissan developed, manufactured, marketed, and sold the Class Vehicles, it knew that they contained the Defect that posed serious safety risks to consumers like Plaintiff and Class members.

100.     Nissan concealed its knowledge of the Defect from consumers like Plaintiff and Class members and instead sold Class Vehicles as safe for normal use.

101.     Nissan violated the MMPA when it sold Class Vehicles that it knew were unsafe for ordinary and intended use; when it misrepresented to the public that its Class Vehicles were safe to use; when it failed to warn consumers that the Class Vehicles contained the Defect that posed serious safety risks to consumers and the public; when it misrepresented that the Recall Remedy would adequately fix the Defect; and when it failed to institute a good faith recall that adequately fixes the Defect.

102.     Nissan's violations of the MMPA were designed to conceal the unreasonable safety risks associated with the Defect in order to induce Plaintiff and the Class Members to purchase Class Vehicles and to avoid the high cost of recalling, replacing, repairing and/or retrofitting Class Vehicles. No reasonable consumer would have knowingly bought or leased a Class Vehicle if they had known of the Defect.

103.     The Defect created and continues to create serious safety risks, which Nissan intentionally concealed from consumers like Plaintiff and Class Members.

104.     Complaints about Soft Braking began as early as 2010, but Nissan failed to warn consumers until March 22, 2018, which created an unnecessary and substantial risk to drivers.

105.     Nissan's violations of the MMPA were designed to conceal by failing to disclose material facts about the Defect.

106.    Nissan's violations of the MMPA were designed to induce Plaintiff and the Class members to purchase the Class Vehicles containing the Defect and to avoid the cost of replacing, repairing and/or retrofitting the defective Class Vehicles already in use by consumers throughout Missouri.

107.    Plaintiff and the Class members suffered injury-in-fact as a direct result of Nissan's violations of the MMPA in that they have purchased or leased Class Vehicles that have a diminished resale value, that pose an immediate safety risk, and that require costly repairs.

108.    Had Nissan disclosed the true quality and defective nature of the Class Vehicles, Plaintiff and Class Members would not have purchased the Class Vehicles or would have paid substantially less for them.

109.    As a result of Nissan's conduct, Plaintiff and the Class Members have also been denied the use of their Class Vehicles, expended money on replacements, repairs, and damages to their Class Vehicles and suffered emotional injury because Plaintiff and certain members of the Class have experienced Soft Braking and fear it will happen again and cause a serious collision and bodily injury.

110.    To this day, Nissan continues to violate the MMPA by concealing the defective nature of the Class Vehicles by failing to issue an adequate recall that fixes the Defect, by failing to notify customers of the serious safety issues posed by the Defect, and by failing to offer cost-free repair or replacement of the defective HCUs.

111.    As a direct and proximate result of Nissan's unfair acts or practices alleged herein, Plaintiff and the Class Members were damaged.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, prays that the Court enter judgment against Nissan and in favor of Plaintiff and the Class Members, and to award the following relief:

(a)     For an order certifying the proposed Class and appointing Plaintiff and his counsel to represent the Class;

(b)     For an order and judgment awarding Plaintiff and members of the Class their actual damages, statutory damages, and/or any other form of monetary relief permitted under the law;

(c)     An order awarding Plaintiff and the Class restitution, disgorgement or other equitable relief as the Court deems proper;

(d)     An order requiring Nissan to adequately disclose and repair the Defect;

(e)     For an order and judgment awarding Plaintiff and the members of the Class pre-judgment and post-judgment interest;

(f)     For an order and judgment awarding Plaintiff and the members of the Class reasonable attorneys' fees and costs of suit, including experts' witness fees;

(g)     For and order and judgment for punitive damages in an amount that is fair and reasonable, but will serve to deter Nissan and others from like conduct in the future; and

(h)     For and order awarding such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all claims so triable.

Dated: September 16, 2019                    Respectfully Submitted,


_/s/ Jack McInnes_____
Jack McInnes, MO Bar No. 56904
MCINNES LAW LLC
1900 West 75th Street, Suite 120
 Prairie Village, Kansas 66208
(913) 220-2488 office
(913) 273-1671 facsimile
jack@mcinnes-law.com

ATTORNEY FOR PLAINTIFF AND
PUTATIVE CLASS

24