IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| SCOTT ELLIS, on behalf of himself and all other similarly situated, | ) ) ) |
| Plaintiffs | ) ) |
| v. | ) No. 4:19-CV-00750-FJG ) |
| NISSAN NORTH AMERICA INC., and NISSAN MOTOR COMPANY, LTD., | ) ) ) |
| Defendants. | ) ) |

## ORDER GRANTING MOTION TO DISMISS

This putative class-action case arises out of Plaintiff Scott Ellis' allegations that Defendants Nissan North America Inc. and Nissan Motor Company's (collectively, "Nissan") model-year 2009 Murano contained a defective braking system. Although Nissan issued a voluntary recall while under an investigation by the National Highway Traffic Safety Administration ("NHTSA"), Plaintiff is suing for a more extensive remedy, including damages.

Now before the Court is Nissan's motion to dismiss for failure to state a claim (Doc. 12). Because the Complaint fails to state any of the four causes of action with the requisite specificity, the motion is GRANTED.

### Standard of Review

Courts may dismiss a complaint for failing "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In ruling on a motion to dismiss, the Court "must accept as true all of the complaint's factual allegations and view them in the light most favorable to the Plaintiff . . . ." *Stodghill v. Wellston School Dist.*, 512 F.3d 472, 476 (8th Cir. 2008). To avoid dismissal, a complaint must include "enough facts to state a claim to relief that is plausible on its

face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Plaintiff need not demonstrate the claim is probable, only that it is more than just possible. *Id.* In reviewing the complaint, the court construes it liberally and draws all reasonable inferences in the plaintiff's favor. *Monson v. Drug Enforcement Admin.*, 589 F.3d 952, 961 (8th Cir. 2009).

**Background**

Plaintiff Scott Ellis purchased a 2009 Nissan Murano ("the Vehicle") in 2011 from a dealership in Jackson County, Missouri, for his own personal use.

In May 2017, the NHTSA opened a Preliminary Investigation into possible "soft" braking problems in Nissan Muranos. "Soft" braking means the driver has to push the brake pedal all the way to the floor before the car slows. Nissan claims it acknowledged a problem in the braking system's ABS control module[1] in June 2017, which could result in an increased braking time. Nissan responded to the NHTSA investigation in July 2017.

In November 2017, Plaintiff experienced a "soft" braking episode. Plaintiff brought the Vehicle into a Nissan dealership to have his brakes checked. The dealership could not replicate the issue, and a representative told Plaintiff the dealership was unaware of a braking issue associated with similar Nissan Muranos.

In March 2018, Nissan issued a Voluntary Service Campaign to notify vehicle owners of the soft-braking issue. In April 2018, the NHTSA upgraded its investigation to an Engineering Analysis.

---

[1] "ABS control module" and "Hydraulic Control Unit" are both terms to describe the same part (Doc. 13 at 7 n.1).

In November 2018, Plaintiff experienced another soft-braking episode. This time, when Plaintiff brought the Vehicle into the dealership, the dealership completed the recall remedy, which included flushing the Vehicle's brake fluid and inspecting its ABS Actuator. Plaintiff also requested the dealership replace his ABS Actuator, but it would only do so if Plaintiff paid for the replacement.

In December 2019, Nissan upgraded its Voluntary Service Campaign to a Voluntary Safety Recall and notified owners of a remedy for a soft-braking issue. In both its Voluntary Service Campaign and Voluntary Safety Recall, Nissan informed consumers that its dealers would flush the vehicle braking system and test the ABS Hydraulic Control Units to detect any possible stuck valve conditions. If necessary, Nissan would also replace the Hydraulic Control Units. Nissan removed and replaced Plaintiff's ABS control module in June 2019. It is unclear whether Plaintiff paid for the removal and replacement.

Plaintiff filed the Complaint (Doc. 1) on September 16, 2019, bringing claims for fraudulent concealment, unjust enrichment, violation of the Missouri Merchandising Practices Act ("MMPA"), Mo. Rev. Stat. § 408.020.1, and a declaratory judgment finding a material defect that necessitates an effective remedy.

The Complaint makes a conclusory allegation that Nissan knew of the soft-breaking defect in 2010 but failed to take any action to remedy the defect at that time. It also alleges Nissan's communications regarding its voluntary safety recall were deficient because they lacked information indicating the seriousness of the danger, including the potential for "a serious collision and bodily injury" due to the soft-braking issue. Plaintiff alleges that Nissan's voluntary efforts have been, and continue to be, inadequate to deal with the defective soft-breaking issue.

As for remedies, the Complaint seeks economic damages (including the purported lost resale value of the Vehicle), punitive damages, attorneys' fees, and a declaration "that the defective nature of the Class Vehicles is material and requires an effective remedy that will prevent Soft Braking from recurring, thereby preventing future harm."

## Analysis

Nissan moves to dismiss on a variety of grounds, arguing Plaintiff lacks standing, its voluntary safety recall moots Plaintiff's claims, the primary jurisdiction of the NHTSA should control, and Plaintiff has failed to state a claim on any of the Complaint's individual counts.

The Court rules as follows.

**I.   Plaintiff lacks Article III standing for injunctive relief in the form of a new ABS unit.**

Nissan requests that the Court dismiss Plaintiff's request for injunctive relief—namely, an order requiring Nissan to replace the ABS control module in his vehicle—based on a lack of Article III standing to pursue this particular injunctive relief. Nissan argues he cannot show any risk of future harm because Nissan has already replaced his ABS control module, a fact which he concedes.

Article III standing requires a plaintiff to establish "an injury in fact, . . . a causal connection between the injury and the conduct complained of, . . . which is redress[able] by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). With respect to the injunctive relief sought in the present case, the Court holds a favorable decision will not redress Plaintiff's injury—at least with respect to his ABS control module—because that injury has already been redressed by replacing his ABS unit. Thus, Plaintiff lacks standing to seek injunctive relief of a new ABS unit. *See Owen v. Gen. Motors Corp.*, No. 06-4067-CV-NKL, 2006 WL 2808632, at *3 (W.D. Mo. Sept. 28, 2006) (dismissing the named plaintiff's request for injunctive relief because

plaintiff's allegedly defective windshield wiper blade assembly had already been replaced, and the court had no reason to believe it would need to be replaced again in the near future). Of course, if Nissan did not pay for the cost of this repair (a fact which is unclear from the existing record), then Plaintiff can recover this cost as damages.

The real issue is whether this finding affects Plaintiff's ability to represent a class seeking replacement ABS units. 2006 WL 2808632, at *3 n.1. The parties have not briefed this issue, and the Court makes no finding on it.

## II. Nissan's voluntary safety recall does not moot Plaintiff's claims.

Nissan contends Plaintiff's claims should be dismissed with prejudice as moot because the NHTSA-regulated recall provides Plaintiff with a complete remedy. Nissan argues Plaintiff's claim that the recall is inadequate is based on speculation and cannot forestall dismissal of the case as moot.

Mootness is a prudential doctrine related to standing and applies when "there remains not enough value for the courts to add to warrant carrying on with the business of deciding its merits." *Winzler v. Toyota Motor Sales U.S.A., Inc.*, 681 F.3d 1208, 1210 (10th Cir. 2012). In *Winzler*, the Tenth Circuit found that the "statutorily mandated and administratively overseen national recall process" offered the plaintiff complete relief. *Id.* Here, however, it is unclear whether Nissan's recall efforts adequately address the soft-braking issue. And even if they did, those efforts would not address any economic damages Plaintiff may have.

Accordingly, the Court holds the safety recall does not moot Plaintiff's claims.

## III. The Court declines to apply the primary-jurisdiction doctrine here.

The primary-jurisdiction doctrine is a "common-law doctrine that is utilized to coordinate judicial and administrative decision making." *Access Telecomms. v. Sw. Bell Tel. Co.*, 137 F.3d

5

Case 4:19-cv-00750-DGK    Document 23    Filed 06/11/20    Page 5 of 10

605, 608 (8th Cir. 1998) (citation omitted). "The doctrine allows a district court to refer a matter to the appropriate administrative agency for ruling in the first instance, even when the matter is initially cognizable by the district court." *Id.* (citation omitted). "There exists no fixed formula for determining whether to apply the doctrine of primary jurisdiction." *Id.* (citing *United States v. W. Pac. R.R. Co.,* 352 U.S. 59, 64 (1956)). Instead, courts must consider in each case "whether the reasons for the doctrine are present and whether applying the doctrine will aid the purposes for which the doctrine was created." *Id.* (citation omitted). In undertaking this analysis, a court must be mindful that the primary-jurisdiction doctrine "is to be invoked sparingly, as it often results in added expense and delay." *Alpharma, Inc. v. Pennfield Oil Co.*, 411 F.3d 934, 938 (8th Cir. 2005).

Nissan asks this Court to defer to the NHTSA with regards to any recall-related relief. But Plaintiff maintains that the recall initiated by Nissan is inadequate. This Court has little information as to the extent of the investigation the NHTSA has done into the soft-braking issue. Given that the doctrine is to be invoked sparingly, and the Complaint alleges the current recall is insufficient to address the soft-braking issue, the Court declines to defer to the NHTSA under the primary-jurisdiction doctrine.

**IV.     The Complaint fails to state a claim on each of the individual counts.**

    **A.     The Complaint fails to state a claim for fraudulent concealment.**

A plaintiff claiming fraudulent concealment must plead the following elements: (1) defendant did, or failed to do, something that caused the injury; (2) defendant's conduct failed to meet the required standards of professional competence and was therefore negligent; (3) defendant had actual knowledge that he or she caused the injury; (4) defendant's acts were fraudulent; and (5) plaintiff did not fail to ascertain the truth earlier because of a lack of diligence.[2]

---

[2] The Court has omitted an additional element that applies only to medical-malpractice claims. *Roth*, 210 S.W.3d at 259.

*Roth v. Equitable Life Assur. Soc. of the U.S.*, 210 S.W.3d 253, 259 (Mo. Ct. App. 2006) (citing Mo. Rev. Stat. § 516.280). The "crux" of a fraudulent-concealment claim is a defendant who "by [its] post-negligence conduct, affirmatively intends to conceal from plaintiff the fact that the plaintiff has a claim against the defendant." *Id.* (citing *Batek v. Curators of the Univ. of Mo.*, 920 S.W.2d 895, 900 (Mo. 1996)).

Federal Rule of Civil Procedure 9 applies when a claim involves fraud, as a claim of fraudulent concealment necessarily does. Under Rule 9(b), allegations of fraud must "state with particularity the circumstances constituting fraud," unless those circumstances involve "motive, intent, knowledge and other conditions of a person's mind" which require only a general allegation. The complaint must "plead such facts as the time, place, and content of the defendant's false representations . . . ." *Neubauer v. FedEx Corp.*, 849 F.3d 400, 406 (8th Cir. 2017).

Here, Plaintiff alleges that Nissan "attempted to conceal the serious nature of the Defect in communications with the Class and others" (Doc. 1 at ¶ 80). As a fraud claim, Plaintiff must meet the heightened pleading requirements of Rule 9(b). Plaintiff fails to do so. First, Plaintiff's claim that Nissan knew of the soft-breaking issue in 2010 is conclusory and does not appear to be based on any facts, or any facts from which such a conclusion could be inferred. It appears the earliest date one can infer that Nissan had knowledge of the defect is 2017.

Next, Plaintiff alleges he first noticed the soft-breaking issue in November 2017. At that time, the NHTSA was already investigating the issue, and Nissan was complying with the investigation. This eviscerates Plaintiff's allegation that Nissan caused Plaintiff's injury by doing or failing to do something. Plaintiff fails to state with the requisite particularity what Nissan did or did not do in November 2017 that caused his injury. A conclusory allegation that Nissan fraudulently concealed the soft-braking issue does not adequately plead fraud under Rule 9.

Therefore, the fraudulent concealment claim is DISMISSED.

### B.     The Complaint fails to state an MMPA claim.

The Court next turns to Plaintiff's claims under the MMPA. The MMPA has the statutory purpose of "protecting consumers and serving as a deterrent to fraudulent and deceptive merchandising practices." *Ward v. W. Cty. Motor Co.*, 403 S.W.3d 82, 86 (Mo. 2013). Under the MMPA, actual damages may be recovered by anyone who has (1) purchased merchandise from a defendant, (2) for personal, family, or household purposes, (3) suffered an ascertainable loss of money or property, (4) because another person has used an unlawful method. Mo. Rev. Stat. § 407.020; *see also Murphy v. Stonewall Kitchen, LLC*, 503 S.W.3d 308, 311 (Mo. Ct. App. 2016). Unlawful methods include "unfair practice or the concealment . . . of any material fact in connection with the sale . . . of any merchandise in trade or commerce . . . ." And an unfair practice is one which "offends any public policy . . . or is unethical, oppressive or unscrupulous; and presents a risk of, or causes, substantial injury to consumers." Mo. Code Regs. Ann. tit. 15 § 60-8.[3] Moreover, for MMPA claims, "proof of deception, fraud, or misrepresentation is not required to prove unfair practices . . . ." *Id.* Whether conduct violates the MMPA is a case-by-case determination made by the court. *Huch v. Charter Commc'ns, Inc.*, 290 S.W.3d 721, 724 (Mo. 2009) ("Sec. 407.020 does not define deceptive practices; it simply declares unfair or deceptive practices unlawful. This was done to give broad scope to the meaning of the statute and to prevent evasion because of overly meticulous definitions. This leaves to the court in each particular instance the determination whether fair dealing has been violated.").

Here Plaintiff's MMPA claim also involves the omission of a material fact, and thus is subject to Mo. Code Regs. Ann. tit. 15 § 60-9.110, which defines an omission as "any failure by a

---

[3] The MMPA gives the Missouri Attorney General the authority to promulgate rules that have the force and effect of law. *See United Pharmacal Co. of Mo. v. Mo. Bd. of Pharmacy*, 159 S.W.3d 361, 365 (Mo. 2005).

person to disclose material facts known to him/her, or upon reasonable inquiry would be known to him/her." Plaintiff alleges that Nissan did not disclose the soft-braking issue as soon as it was known to it, and when it did notify consumers, it failed to adequately inform them as to the issue's seriousness. Implicit in these omissions is Nissan's knowledge of the issue prior to the 2017 NHTSA's investigation and the danger it presents to drivers. As in his fraudulent-concealment claim, Plaintiff presents no evidence Nissan had this information prior to the 2017 investigation.

Thus, the MMPA claim is DISMISSED.

### C. The Complaint fails to state a claim of unjust enrichment.

Plaintiff next contends he is owed recovery under a theory of unjust enrichment. "The phrase 'unjust enrichment' is used to characterize the effect of the failure of a party to make restitution where it ought to be made." *Graves v. Berkowitz*, 15 S.W.3d 59, 61 (Mo. Ct. App. 2000). Unjust enrichment applies when (1) the plaintiff confers some benefit to the defendant, (2) the defendant appreciates the benefit, and (3) the defendant accepts or retains the benefit under circumstances which render the acceptance or retention unequitable. *Howard v. Turnbull*, 316 S.W.3d 431, 436 (Mo. Ct. App. 2010) (citations omitted). However, the "[m]ere receipt of benefits is not enough to prevail in a claim of unjust enrichment when there is no showing that it would be unjust for a party to retain the benefit received." *Am. Standard Ins. Co. of Wis. v. Bracht*, 103 S.W.3d 281, 292 (Mo. Ct. App. 2003) (citing *Graves*, 15 S.W.3d at 61).

Here, Plaintiff alleges he conferred a benefit to Nissan by purchasing the Vehicle, which Nissan presumably appreciated. When Plaintiff made that purchase in 2011, there were no circumstances indicating that the sale of the vehicle was unequitable or unjust. Therefore, his claim for unjust enrichment is DISMISSED.

### D. The declaratory-judgment request fails for lack of a valid underlying claim.

Plaintiff seeks a declaratory judgement as to whether (1) Nissan "failed to warn against the unsuitability" of the 2009 Nissan Murano, (2) Nissan "failed to provide an appropriate remedy" to the soft-breaking issue, (3) Nissan "bears [the] responsibility for providing a cost-free remedy" to fix the issue, and (4) the soft-breaking issue "posed a risk to drivers" (Doc. 1 at 17). Plaintiff seeks this declaration under 28 U.S.C. § 2201, which allows the Court to issue a declaratory judgment "whether or not further relief is or could be sought."

The Court, however, must dismiss Plaintiff's declaratory-judgment claim because § 2201 establishes only a remedy, not a cause of action. *See Schilling v. Rogers*, 363 U.S. 666, 667 (1960) ("the availability of such relief [under 28 U.S.C. 2201] presupposes the existence of a judicially remediable right"). For Plaintiff to bring a valid declaratory-judgment claim, he must have a "viable underlying cause of action." *Salau v. Denton*, 139 F. Supp. 3d 989, 1012 (W.D. Mo. 2015); *Essling's Homes Plus, Inc. v. City of St. Paul, a Minn. Corp.*, 256 F. Supp. 2d 971, 984 (D. Minn. 2004) (citing *Collin Cty. v. Homeowners Ass'n for Values Essential to Neighborhood*, 915 F.2d 167, 170–71 (5th Cir. 1990). Because the Court has dismissed all Plaintiff's underlying claims, he cannot maintain a claim for declaratory judgment. Thus, the declaratory-judgment claim is DISMISSED.

### Conclusion

For the foregoing reasons, Nissan's motion to dismiss (Doc. 12) is GRANTED. Plaintiff's claims are DISMISSED WITHOUT PREJUDICE.

**IT IS SO ORDERED.**

Date: June 11, 2020  /s/ Greg Kays
GREG KAYS, JUDGE
UNITED STATES DISTRICT COURT